Good morning, Your Honors. May it please the Court, my name is Prashanthi Rangan and I'm appearing on behalf of Chris Gonlath and his family. There are two issues before this Court. The first issue is that of jurisdiction, and that is whether this Court has jurisdiction to consider the immigration judge's denial of the adjustment of status and voluntary departure. The second issue before the Court is whether the immigration judge was correct in denying the asylum withholding of removal and relief under the Convention Against Torture on the basis that Mr. Gonlath was a persecutor and thus fell into the statutory bar of 101-842. Does that bar hold for adjustment of status as well? That particular bar does not hold for adjustment of status, but it can be used as a discretionary factor, Your Honor. With respect to the jurisdiction, the government has cited to the case of Fernandez v. Gonzales, which states that a court shall not have jurisdiction over discretionary findings. So situations where an individual is seeking relief under 212-H, 212-I, cancellation, which was what was applicable in that case, and 245. However, that case also very clearly states that irrespective of that bar, a court retains jurisdiction over any constitutional claims and any legal issues that are raised. This is basically what the Real ID Act of 2005 also states. It acknowledges the fact that a court does not have jurisdiction over discretionary findings, but it carves out an exception for any matters that are raising constitutional issues or legal claims. And what are the constitutional issues or legal claims in this case? I don't believe there are any constitutional issues in this case, Your Honor, but I definitely think that there is a legal claim. The immigration judge, in denying the adjustment, the only adverse factor that she looked at was the activities that Mr. Gonlath was involved in against the LTTE. And she – the facts in the case are undisputed as to exactly what information was passed on to his brother. The immigration judge found him credible with respect to that matter. So I think inherently in her decision, in denying the adjustment in her discretion, she had to apply the undisputed facts of the case to the law, and she used that legal determination to support her discretionary finding. Isn't that just another way of challenging the discretionary determination, which is impermissible? I don't believe so, Your Honor, because ultimately it is a factual analysis. And a factual analysis applied to the applicable case law is a non-discretionary matter. So in essence, what the immigration judge was doing was using the undisputed facts in the case, looking at the applicable case law, and finding that he was a persecutor under that case law, and applying that to support her discretionary – Couldn't you say that for every case, though? You have to apply the law to the facts of every case. You do have to apply the law to the facts of every case, but when the case law very clearly states the standard that needs to be met in supporting the conclusion that someone is a persecutor, and the case law applies these facts in different scenarios, then it goes beyond just it being a discretionary matter. I think the same argument can be made with respect to the voluntary departure denial. That, I agree, is a completely discretionary denial, but the only basis for denying the voluntary departure was, again, the good moral character, which went back to his activities. So in both scenarios, she was using a legal determination to support her discretionary finding. What case authority are you relying upon to support your argument that application of the law to the facts is outside the bar on review? Well, the Real ID Act, for one, Your Honor, and I believe the case of Hernandez v. Ashcroft, which was a Ninth Circuit case in 2003, that case held that determinations that require application of law to factual determinations are nondiscretionary. For example, in cancellation of removal, we can review whether there was 10 years of continuous physical presence, that is, whether the I.J. got that wrong, while we can't review the discretionary determination of exceptional circumstances. That's correct, Your Honor. With respect to... So what's the concrete issue of law, then, in this case? Whether the law supports... The concrete issue is whether his actions under the law would support a finding that he is a persecutor. Now, with respect to the second issue, Your Honor, that is basically whether the immigration judge was correct in denying the asylum because she found him to be a persecutor. I have a limited amount of time, so I'll just summarize that argument. The BIA and the Ninth Circuit have considered that issue on many occasions. The BIA has said that there needs to be clear evidence to show that someone is a persecutor, and the Ninth Circuit has said that there needs to be clear, convincing, and unequivocal evidence that an individual's actions amount to persecution. The testimony in this case is undisputed. Mr. Gonlath testified that he supported the U.N.P., the United National Party, which was the duly appointed government at the time. He stated that he provided information against the LTTE to his brother, and the State Department recognizes that the LTTE is a terrorist organization. At some point, we don't have any set timeframe as to when it happened, but at some point, these two LTTE training camps were bombed. He was questioned about this during his hearing, and he couldn't say concretely that the government bombed the two LTTE training camps due to the information that he provided. He also couldn't be 100% sure that... Even if they had, as I understand it, these terrorist training camps were located within the village. That's correct, Your Honor. And the terrorists were engaging in civil war against the government. That's correct. So he was assisting the government in fighting terrorists who were engaging in a war. That's correct, Your Honor. Isn't there a law that says that that's not persecution, that that's when there's a civil war? Yes, there is a case by the BIA which states that that would not amount to persecution. And that's basically the argument, that if you look at the cases where this issue has been considered, we're dealing with individuals who are somehow furthering the goals of a terrorist organization. They're somehow either providing arms to that terrorist organization, training members of the terrorist organization to further those goals. This situation is very distinct, because as you said, he was not helping the terrorist organization. He was working with the government to stop the terrorists from potentially killing innocent civilians and doing whatever... So was that argument made to the BIA? Yes, I believe it was, Your Honor. That he was, that there was a civil war and he was helping in the civil war? I believe we cited to a matter of ACOSTA, which says that in a situation where an individual is helping the government... Did you make the discrete argument in your presentation to the BIA that there was no persecution because there was a civil war and he was working on the side of the government? Yes, I did. On page 14 of my brief, Your Honor, I cite to the fact that his conduct was related to civil war and the harm to civilians was a result of behavior directed to the defense of the... Page 14 of your brief here, or I was asking about to the BIA? It's page 14 in the Ninth Circuit, but I believe that argument was also raised in the brief. And I'm going to reserve the rest of my time for rebuttals, Your Honor. Good morning. May it please the Court, David Dauenheimer on behalf of the respondent, the Attorney General. Firstly, I want to address the burden of proof below in the standard of review here. Counsel suggested that the standard was a clear and convincing standard that the government had to meet with regard to the persecutor issue. However, that may be true in a case where the finding of deportability is based on a persecutor status, but in a case such as this, that's not the burden of proof for the standard. In a case where there is some evidence in the record that an alien may have assisted or participated in the persecution of others, the burden then shifts to the alien to prove by preponderance of the evidence that he was not a persecutor. Therefore, before the agency, that burden was on the alien. And as the case comes before this Court, then the burden is on the alien to show that the evidence of record compels the conclusion that he met that burden below rather than any clear and convincing standard. So you're saying that the record compels the conclusion that he showed by a preponderance of the evidence below that he was not a persecutor? That's correct, Your Honor. Okay. That's correct, Your Honor. And based on the evidence that was before the immigration judge, we argue that the record does not compel that conclusion. Petitioner's came before the immigration court and submitted an application for asylum. In that application for asylum, at page 455 of the record, there are several quotations in there regarding his belief at that time that he had persecuted others. He states that he was appointed by the UNP as an informant. He states that he himself appointed agents to obtain the relevant information and that he informed the Defense Department of the location of Tamil bases and that the Defense Department scheduled for a, quote, swift attack that they destroyed two villages. Over 100 to 200 people were dead, including, quote, a few terrorists. He states that he felt very bad because he was working for the government at that time. And he goes on to say that he was a very active member of the UNP and that he took firm steps to join the government movement to, quote, retaliate. Counsel, what's your response to opposing that counsel's argument that when there's a civil war and one is helping the government to quell that civil war, the uprisers, if you will, that there is no persecution? I think it's a line drawing exercise to some degree, Your Honor. And what happened in this case is the immigration judge looked at the situation in Sri Lanka at the time and looked at the information from the State Department reports and saw that there was information that said that both sides in this conflict were involved in abuses. And based on that information, wasn't persuaded either by, wasn't persuaded by the petitioner's arguments that he either didn't know that his information would be used improperly and also that any argument such as the one you raised, Your Honor, that conduct, that this was just proper conduct in defense of government at the time, that wasn't persuasive to the immigration judge based on the information that the judge had in the record at the time. I have two questions on that. I mean, first of all, the State Department report goes on at length about the civil unrest. And it's the section on overview of current situation in Sri Lanka. And I don't recall that, maybe you can point out where the BIA or the IJ actually discussed the description of the, what the State Department said about the LTT being terrorists and the government trying to stop them. Well, I think when the case was... For example, the LTT, however, continued to engage in extrajudicial killing and resumed attacks on civilians. It does say both sides in the street, prisoners and arrest suspected opponents on an arbitrary basis. And I guess my second question has to do with actions by our own country, which seem fairly analogous to me. I don't know if you recall in 1998, President Clinton ordered the bombing of a village encampment in, I'm not sure which country it was, where supposedly some of the modern members of Al-Qaeda were there and perhaps had weapons and equipment. And he got that information from people who were spies in the country there and who had reported that back to the CIA who informed President Clinton about that. So we, the United States of America, sent him bombs based on that information. And the result was, I guess, the Al-Qaeda members managed to escape because their own informants told them about the bombing. And we ended up killing numerous civilians, including, I think it was one of Osama bin Laden's sons. Now, I don't think any of us believe that President Clinton or the informants who gave me the information were persecutors, as is defined here. Yet the situation seemed fairly analogous. It's an interesting question, Your Honor. And I think on the face of it, there are some analogies that can be drawn. However, I think what happened in this case was the immigration judge was looking at the particular situation in Sri Lanka at the time and the evidence of widespread abuse from both sides of the conflict and differentiates it from, say, an action by our government or another government in a different context. They were terrorists, and they were trying to overtake the government. And this man was in Beiran. He wasn't even there. He was just receiving information, and he gave it to his own government to help fight the terrorists. Right. But I think what the immigration judge was looking at was that there is a long history of that government, the BNP, acting in a way which was persecutory towards all of the Tamil people, not just the people that might have been sponsoring terrorism, the LTTE. I don't understand what difference that would make to someone who's helping their government. I mean, is the BIA judging who's right in the conflict? I mean, I don't understand how that relates, bears on the decision as to this particular individual. Well, I think it's a factual decision that the immigration judge has to make. And if one were to take Your Honor's point of view to its extreme, then I think it would perhaps absolve individuals from providing their government with information, no matter how bad that government was considered a beast. For instance, there are a couple of cases dealing with support for the Nazi government in the 1940s, where one case involved a newspaper editor who worked in collaboration with the Nazis to publish anti-Jewish articles and information there. And he was found to have participated and assisted in the persecution of others. It is a difficult line drawing, I think, Your Honor. Obviously, that's a more extreme case than what we have in this case. The State Department doesn't take the position that the government of Sri Lanka rises to the level of the Nazi government. Obviously not, Your Honor. However, there are cases where Tamil people have sought asylum in this country based on fear of persecution by the particular government that was in charge at the time. We have several of those today, too. Right, Your Honor. And there we have to determine whether they're regular Tamil people or whether they're actually Tamil tigers. Well, I guess if you were differentiating between, I guess, proper prosecution or persecution, yes. All right. Counsel, if I understand your argument, is your argument that the government itself is a persecutor and this applicant became, if you will, a co-persecutor? Is that your argument? For the particular instance that the individual brought forward, his information led to a persecutory act. That is the indiscriminate targeting of what he admits to almost 200 individuals, civilian individuals. Civilians and not terrorists? According to his admissions, he said that 100 to 200 civilians were killed. I guess that was a side effect of the government bombing the terrorist camps, right? The government wasn't purposely setting out to bomb civilians. They could have just done that randomly. They were trying to destroy the terrorist camps. Well, I think it's not that clear from the record, Your Honor. I think what the immigration judge was looking at was, again, the history of the abuses on both sides and the fact that the government at that time had abused or mistreated or killed indiscriminately Tamils on the other side. And so the immigration judge made a decision based on the information in the record that his assistance or participation in that particular act was sufficient to constitute assisting or participating in persecution. There is one case that I don't believe was cited to the court. It's out of the Fourth Circuit. It's recent from January, I believe, of 2006. Higawit v. Gonzalez at 433 F. 3rd 417, which is somewhat similar to this case in that it dealt with a Philippine intelligence officer under the Marcos regime who was giving information to the Marcos regime, which was then being used against the opponents of that regime. Could you write that down on a slip of paper and hand it up to the citation for that case? Yes, Your Honor. You want me to do that now? Well, at the end of your argument. Okay. Yes, Your Honor. And that case is also interesting because it involves a remand for adjustment, so it also addresses the jurisdictional questions with regard to the court's reviewing and adjustment of status. What was the status of the United States' relationship with the Marcos regime? I'm not sure, Your Honor. Wasn't it more aligned with our status versus the Nazis and our status versus Sri Lanka? I have to admit that I'm not sure, Your Honor. I remember that. You're probably a lot younger. I guess the last thing I wanted to touch on was with regard to the adjustment of status issue. Counsel stated that the only factor that was considered by the immigration judge was the persecutor status of the alien, but that's not entirely true. The record will show that the immigration judge looked at two factors. One, his involvement in the persecutory acts, and two, his manner of entry into the United States. That is, he came to the United States as a visitor for pleasure and overstayed. All right. Counsel, I let you go over your time because we were asking so many questions that I think you better close it up. Thank you, Your Honor. That's all I have. You have a few seconds left. I would just like to address one issue raised by the government with respect to the adjustment. It's true that the immigration judge does cite to the manner of entry, but that in and of itself was not the main reason for the denial. The law recognizes that depending on the manner of entry and when certain petitions are filed, an individual is still eligible to adjust his status. So if the manner of entry had been the only issue in this case, the immigration judge would have been able to grant the adjustment in her discretion. So that was a very, very minor factor, which she doesn't even place that much attention to. The main focus really was the activities, his activities against the LGTE. And finally, with respect to the standard, Mr. Gonlatz showed that he was eligible for asylum. The immigration judge found him credible, and she also stated that there was a well-founded fear of persecution. So the government would still need to show by a clear, convincing and unequivocal standard that his acts amounted to persecution. Once that is established, the burden shifts to him to show by a preponderance of the evidence why his acts did not amount to persecution. And unless the court has any other questions. I have a question. To show persecution, you have to show that the actions were motivated by race, religion, national origin or political belief. In a case like this, how do you get the political belief out of the equation? How do you get the political belief out of the equation? Yeah, I mean, aren't the actions, can it be argued that the actions are based on political belief, the actions of your client? Yes, it could be argued that it was based on political belief because, well, you're right. His actions were based on the fact that he supported the government, and the government had a certain political mindset which the terrorists opposed. So I'm not sure there is a way to get the political belief out of it, Your Honor. Thank you. Thank you. All right, thank you, counsel, for two good arguments.
judges: Wardlaw, Rawlinson & Cebull